(Decided October 28th, 1898.)

---

SIGMUND H. WEIHENMAYER *vs.* J. IRVIN BITNER, Secretary of the Directors of the Windsor Knitting Mills of Washington County.

*Corporations—Right of Stockholder to inspect Books— Mandamus—Instructions to Jury—No Reversal on Appeal for Harmless Error.*

Code, Art. 23, sec. 5, provides that full accounts shall be kept of the transactions of the directors of every corporation, "which shall be open at all times to the inspection of the stockholders or members." *Held:*

1st. That a stockholder is entitled to make a personal inspection of the books of the corporation and cannot be required to accept anything else as a substitute for that.

2d. That mandamus is a proper remedy to enforce this right of inspection at reasonable times, if it be refused by the officers of the corporation.

3d. That the fact that the stockholder asking to inspect the books is a rival in business of the corporation, and may use the information so obtained to the injury of the corporation, is no ground for refusing the writ, but it would be denied if his purpose were improper or unlawful.

An instruction to the jury that under the pleadings and evidence in the case the plaintiff is not entitled to recover, is too general, but a judgment will not be reversed for error in granting such an instruction if this Court·is satisfied that there is no ground upon which a plaintiff could obtain a judgment in a second trial.

Appeal from the Circuit Court for Washington County (SLOAN, J.). At the trial the following prayers were offered and rejected:

*Plaintiff's 1st Prayer.*—The jury are instructed that the pleadings in this case show that the defendant admits that the plaintiff is a stockholder in The Windsor Knitting Mills, and that he called upon him at his office as secretary of the directors of the Windsor Knitting Mills of Washington county, on the 10th and also on the 18th of December, 1897, and asked permission to inspect the books containing the accounts of the transactions of the president and directors of the said Windsor Knitting Mills, and that said defendant refused to permit the plaintiff to inspect the books, records and papers containing said accounts of their transactions, and under the pleadings in the case the plaintiff is entitled to a verdict.

*Plaintiff's 2d Prayer.*—That from the evidence in this case it appears the plaintiff called upon the defendant and asked to see the books of the Windsor Knitting Mills containing the transactions of the president and directors, and there being no evidence to the contrary, their

verdict should be for the plaintiff, even though the jury believe that the plaintiff at the same time asked to see all the books of the Windsor Knitting Mills.

*Plaintiff's 3d Prayer.*—That the plaintiff is entitled to inspect at such times as he may desire, all the books, records and papers of every kind and description, and all parts of the same containing accounts of the transactions of the president and directors of the Windsor Knitting Mills of Washington County, without the intervention or assistance of the defendant in whose custody the said books and records are kept, and the defendant has no right or power to require the plaintiff to inform him what items in or parts of said books and records he desires to see before permitting him to inspect the same, nor has the defendant any right to prevent the plaintiff from inspecting said books and records, because the plaintiff does not inform him of the purpose for which he desires said inspection.

*Plaintiff's 4th Prayer.*—That the transactions of the president and directors of the Windsor Knitting Mills include the transactions of all persons who by their authority, appointment, direction or employment make contracts of any or every description, whether relating to purchases, sales, rent of property, transportation of goods, prices, employment of labor or other matter connected with the business of manufacturing and selling hosiery, and also included all the transactions of agents who are allowed by said president and directors to exercise the power of transacting business for the company, and also all the transactions of unauthorized agents accepted by the president and directors; and the jury are further instructed that the books and papers or other records containing the accounts of all said above mentioned transactions are by law open to the inspection of the plaintiff; and if the jury believe from the evidence in the case, that at either or both of the times, when, as admitted, the plaintiff called upon the defendant, he, the plaintiff, requested the defendant to permit him to inspect said books, papers or records, and said defendant refused to permit the plaintiff to examine the same, then their verdict should be for the plaintiff.

*Plaintiff's 4½ Prayer.*—That the books of the Windsor Knitting Mills are the books containing the accounts of the transactions of the president and directors, and it appearing from the pleadings and evidence in the case, that the plaintiff asked the defendant to permit him to see and inspect said books, and that the defendant refused permission to make said inspection, and there being no evidence to the contrary, their verdict should be for the plaintiff.

*Plaintiff's 5th Prayer.*—That if the jury believe from the evidence in the case that at one or both of the times, when, as admitted, the plaintiff called upon the defendant in December, 1897, he, the plaintiff, asked said defendant to permit him to see the books of the company, meaning thereby the books or record containing the transactions of the president and directors, if the jury so find, and said defendant refused the plaintiff permission to see any and all books and records in his possession as secretary of the board of directors, then their verdict should be for the plaintiff.

*Plaintiff's 6th Prayer.*—That if the jury believe from the evidence in the case that at the time or times in December, 1897, when, as admitted, the plaintiff called upon the defendant, he requested said defendant to permit him to see and examine the books containing the accounts of the transactions of the president and directors of the Windsor Knitting Mills, and said defendant refused to permit the plaintiff to see and examine said books, then their verdict should be for the plaintiff.

*Plaintiff's 7th Prayer.*—That if the jury believe from the evidence that at the time or times in December, 1897, when, as admitted, the plaintiff called upon the defendant, the purpose and desire of the plaintiff was to inspect the books containing the transactions of the president and directors of the Windsor Knitting Mills, and that defendant so understood the plaintiff from the language used, but refused to permit the plaintiff to inspect any and all books in his possession as secretary of said directors, then their verdict should be for the plaintiff, and the jury are instructed that the fact that

the plaintiff is conducting a hosiery mill of his own has nothing to do with the case.

*Plaintiff's 8th Prayer.*—That the plaintiff, if entitled to inspect every book containing any transaction, directly or indirectly made by the president and directors of the Windsor Knitting Mills, whether contained in the day-book, ledger, cash-book, journal, order-book, minute-book or other book of the company; and if the jury find from the evidence that any one or number of said books, containing transactions (one or more) of said president and directors, and believe that the plaintiff requested defendant to permit him to see and examine said book or books so containing the transactions of said president and directors, and that defendant refused to permit the plaintiff to see and examine the same, then their verdict should be for the plaintiff.

*Plaintiff's 9th Prayer.*—That the business affairs of the Windsor Knitting Mills are under the entire management and control of the president and directors, and the plaintiff being a stockholder, is entitled to an inspection of the books and records containing the accounts of all the transactions of said president and directors in the management of the company's affairs, and if the jury believe from the evidence that the plaintiff requested the defendant to permit him to see and examine said books or records, but the defendant refused to allow the plaintiff to inspect said books or records, then their verdict should be for the plaintiff.

*Plaintiff's 10th Prayer.*—The jury are instructed that if they believe from the evidence that the plaintiff requested defendant to permit him to see and examine the books of the Windsor Knitting Mills, and defendant refused to permit him to examine said books, their verdict should be for the plaintiff.

*Plaintiff's 11th Prayer.*—That any statement or statements made to the plaintiff of the assets and liabilities of the Windsor Knitting Mills have nothing to do with the right of the plaintiff to inspect the accounts of the transactions of the president and directors, and are not to be considered by them; and they are also instructed

that the fact that plaintiff is conducting the hosiery business for himself has nothing to do with this case.

*Defendant's 1st Prayer.*—The jury are instructed that the plaintiff has offered no evidence legally sufficient to find a verdict for the petitioner, and the verdict of the jury must be for the defendant.

*Defendant's 2d Prayer.*—If the jury believe from the evidence that sometime in the month of December, 1897, the petitioner came to the office of J. Irvin Bitner, secretary of the Windsor Knitting Mills, and then and there stated to the said secretary that he wanted to make an examination or investigation of the affairs of the Windsor Knitting Mills, as he thought the books were not properly kept, and the said secretary did then and there refuse to permit said petitioner to take possession of or inspect any books of the Windsor Knitting Mills, which were then in the possession of the said secretary; that said want on the part of the petitioner was too indefinite and general, that said secretary properly refused the want of the petitioner and the verdict of the jury must be for the defendant.

*Defendant's 3d Prayer.*—The jury are instructed that if they believe from the evidence that sometime during the month of December, 1897, the petitioner came to the office of J. Irvin Bitner, secretary of the Windsor Knitting Mills, and demanded an inspection of the books of the Windsor Knitting Mills; and further find from the evidence that the said secretary did not refuse such inspection, then their verdict must be for the defendant.

*Defendant's 4th Prayer.*—The jury are instructed that if they believe from the evidence that the petitioner demanded an inspection of the books of the Windsor Knitting Mills, in the possession of its secretary, J. Irvin Bitner, without showing good and sufficient reasons therefor, then their verdict must be for the defendant; and the jury are further instructed that a belief or speculation on the part of the petitioner that the affairs of said mills were not being properly conducted, is not a good and sufficient reason giving the right to the petitioner to make such inspection.

The Court rejected all the plaintiff's prayers and also the defendant's prayers and instructed the jury as follows: "The jury are instructed that, under the pleadings and evidence in this cause, the plaintiff is not entitled to recover, and their verdict must be for the defendant."

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ.

*H. Kyd Douglas* and *W. C. Griffith*, for the appellant.

*J. Aug. Mason*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

Weihenmayer filed a petition for the writ of mandamus against Bitner, secretary of the Windsor Knitting Mills Company, a corporation. The petitioner is a stockholder in the said company, owning twenty-five shares of its stock of the par value of a hundred dollars a share. He asserts in substance that he has a right to inspect the accounts of the transactions of the president and directors of the corporation, and that Bitner, its secretary, refuses to permit him to make the inspection. He founds his demand of right on the fifth section of the twenty-third Article of the Code. It is in these words: "The president and directors of every corporation shall keep full, fair and correct accounts of their transactions, which shall be open at all times to the inspection of the stockholders or members." The right thus given to the stockholder is unconditional and unqualified. The stockholder has a right to the information contained in the accounts of the transactions of the corporation; and he has a right to obtain this information by his own personal inspection of them. He is not required to accept anything else in lieu of, or as a substitute for, this personal examination. If this be denied him an action for damages would be a very inadequate and imperfect remedy. The relief given to him by the law

would not render complete justice, unless it secured to him the precise right which had been unlawfully withheld from him. The corporation is charged with an imperative duty to the stockholder. It appears to us that the case has every feature which marks the character of the writ of mandamus. In *George's Creek Co.* v. *County Commissioners*, 59 Md. 259, speaking of this writ, the Court said: " Its office, as generally used, is to compel corporations, inferior tribunals, or public officers to perform their functions, or some particular duty imposed upon them, which, in its nature, is imperative, and to the performance of which the party applying for the writ has a clear legal right. The process is extraordinary, and if the right be doubtful, or the duty discretionary, or of a nature to require the exercise of judgment, or if there be any ordinary adequate legal remedy to which the party applying could have recourse, this writ will not be granted." *Foster* v. *White*, 86 Alabama 467, was very much like the present. The Code of Alabama provided that the stockholders of private corporations should " have the right of access to and inspection and examination of the books of the Corporation at reasonable and proper times." . It was held by the Court that a stockholder could enforce his statutory right by *mandamus*, and that if his petition alleges an application at a reasonable and proper time, and its refusal, it is not necessary that it should aver a definite legitimate purpose in making the application, or negative an improper purpose, and that if any good reason existed why the inspection should not be permitted, it ought to be shown as a matter of defence. We may also refer to 1 *Redfield on Railways*, 467: " No better general rule can be laid down upon this subject than that where the charter of a corporation or the general statute in force and applicable to the subject, imposes a specific duty, either in terms or by fair and reasonable construction and implication, and there is no other specific or adequate remedy, the writ of mandamus will be awarded."

It is stated in the answer to the petition that Weihenmayer is engaged in the manufacture and sale of hosiery

and knit goods, and is a rival and competitor of the Windsor Knitting Mills in business; and that he desires an examination of the books, documents and records of the corporation for the purpose of obtaining information to be used by him in the conduct of his own business to the injury and loss of the said corporation. This purpose is denied by the petitioner in his replication, and no proof whatever was offered to sustain the charge at the trial. But the petitioner's right would not be forfeited by any such cause. The right is given to him as a stockholder by statute, and is absolute and not made to depend upon any circumstance but the ownership of the stock. It is easy to see that there might be good reasons for refusing an application; for instance, if it were made for some evil, improper or unlawful purpose. And if such purpose were alleged and proved, the writ would be denied.

At the trial the petitioner submitted twelve prayers to the Court, and the defendant submitted four. The Court rejected all the prayers on both sides, and gave an instruction of its own. The petitioner took an exception to the refusal of its prayers and to the instruction given by the Court. The petitioner's first prayer insists that the pleadings admit that he was a stockholder, and that he made application to Bitner, the secretary, for permission to inspect the books containing the accounts of the transactions of the corporation and that Bitner refused to permit him to make the inspection, and that on these grounds he was entitled to the verdict. We think that these facts are admitted in the first, second and third paragraphs of the answer and that the prayer ought to have been granted. The third paragraph of the answer states that the petitioner asked for all books, papers and accounts of every kind and description whatsoever of the corporation, and that he, the respondent, refused to permit the examination. It was the intention of the provision of the Code which has been mentioned (Article 23, section 5), that the stockholders should have a full opportunity of informing themselves of the business of the corporation, and that

nothing should be concealed from them. The section meant that all the transactions should be fully, fairly and correctly stated, and that these statements should at all times be open to the inspection of the stockholders. The statute recognized the fact that the stockholders were the owners of the property of the corporation and not the president and directors. The petitioner's second prayer undertakes to instruct the jury on the evidence; if the case was rested on this footing the jury ought to have been allowed to find the truth of the facts alleged. Moreover, the jury were not required in this prayer to find that Bitner refused to permit the petitioner to inspect the books containing the transactions. It was properly rejected. The third prayer stated that the petitioner was entitled to inspect the books, etc., at such times as he might desire.. He had a right to examine them at all reasonable times; but he might peradventure wish to inspect them at midnight, or on Sunday, or on some other day when business was suspended by reason of its being a public holiday, or at some other unreasonable time. The other portions of the prayer were correct; and if the right of inspection had been restricted to all reasonable times, the prayer ought to have been granted. But without this restriction it was properly refused. The other prayers of the plaintiff were correct. But it surely was unnecessary to duplicate and reduplicate the same proposition so many times. If the first prayer had been granted the other prayers would have been unnecessary. The defendant's prayers are not strictly before us, but as the case must be tried again we will give our opinion on them. The third prayer leaves to the jury a fact which had been admitted in the pleadings; and the pleadings were brought to the attention of the Court by the petitioner's first prayer. It was properly refused; as were all the other prayers of the defendant. The prayers on which we have not specially commented are all decided by the views which we have expressed on the construction of the fifth section of the twenty-third Article of the Code. We deem it unnecessary to set them out in detail, but all the prayers will be published in full by the Reporter.

The instruction given by the Court is in these words: " The jury are instructed that under the pleadings and evidence in this cause, the plaintiff is not entitled to recover and their verdict must be for the defendant." It has been held a great many times that an instruction in this form was erroneous, because it was too general. It presents no specific point or question. But, nevertheless, it would have been useless to reverse the judgment for this reason, if we had come to the conclusion that there was no ground on which the petitioner could obtain a judgment on a second trial. In *Newbold* v. *Bradstreet,* 57 Md. 38, the trial Court had granted an instruction in terms identical with the one given in this case. The instruction is found in the opinion of this Court on page 49. On page 55 the Court speaks as follows: " The instruction given by the Court, at the instance of the defendant, was defective, inasmuch as it left the matter uncertain, whether the defect or failure of the plaintiffs' case was to be found in the pleadings or in the evidence. There was no case, however, for the jury, and the instruction should have been, that, upon the pleadings in the cause, there was no sufficient evidence of any special damage to entitle the plaintiffs to recover." The judgment was affirmed.

*Reversed and new trial.*

(Decided October 28th, 1898.)