## JOHN H. WIGHT, PRESIDENT OF THE SHER-WOOD DISTILLING COMPANY *et al.* *vs.* GILBERT HEUBLEIN.

*Corporations—Petition by Stockholder for Mandamus to Compel Corporation to Allow Its Books to Be Examined by Accountants—Answer Alleging Improper Purpose of the Petitioner.*

The owner of shares of stock in a distilling company filed a petition asking for a mandamus to compel the officers of the company to permit an audit company to have access to the books and accounts for the purpose of examining the same, and making a full report thereon to the petitioner. The answer of the officers of the company alleged that they had given to petitioner full information as to its affairs, except that they had refused to disclose the names of the purchasers of its goods and the amount of sales to each; that the petitioner was himself engaged in the sale of whiskies; that his application was not made in good faith, but his object was to compel the corporation to give advantage to him over and above that accorded to other dealers; that the real purpose of the petitioner in demanding the audit was not to obtain in-

formation as to the financial condition of the company, but was to harass the defendants and compel them to purchase petitioner's shares of stock at a price above their real value. *Held,* that the order sustaining a demurrer to this answer and directing the writ to issue was improper, and that the case should be tried on its merits, and if the averments of the answer are sustained by the evidence, the writ should be denied.

*Decided January 11th, 1910.*

Appeal from the Superior Court of Baltimore City (STOCK-BRIDGE, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*J. Walter Lord* and *W. H. DeC. Wright,* for the appellants.

*William S. Bryan, Jr.,* for the appellees.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from an order of the Superior Court of Baltimore City passed on the 14th day of May, 1909, sustaining the plaintiff's demurrer to the respondents' answer to a petition for mandamus, and directing the writ of mandamus to issue in accordance with the prayer of the plaintiff's petition filed in the case.

The plaintiff below and the appellee here is the owner of five hundred and eighty-three shares of the capital stock of the Sherwood Distilling Company of Baltimore City, a corporation duly incorporated under the laws of Maryland, and operating a distillery at Cockeysville, Maryland. The defendants below, and the appellants here, are its President, John H. Wight, and its Secretary and Treasurer, William H. Wight, officers of the company. The Sherwood Distilling Company was incorporated in the year 1882, for the purpose of engaging, in the manufacture and sale of whiskies, its cap-

ital stock being divided into seven thousand shares of the par value of $100 each. Subsequently, the company was managed by John J. Wight and his brother-in-law Edward Hyatt, who owned and controlled the entire stock of the company.

Upon the death of Edward Hyatt and sometime in the year 1905, his interest in the company was acquired by the petitioner and his brother, Louis F. Heublein, and at the date of the institution of these proceedings, each of them held and owned 583 shares, of the capital stock of the company, that is, eleven hundred and sixty-six shares, of the entire capital stock of seven thousand shares.

The petition then is filed by a stockholder of the company, owning five hundred and eighty-three shares of its stock, to assert what he claims to be an absolute statutory right on his part, to have the books, accounts and records of the transactions of the company, examined, and a full report made thereon by the Baltimore Audit Company, at the expense of the petitioner.

. The substantive averment of the petition and the one upon which the plaintiff relies, to sustain his application for the writ of mandamus, is set out in the sixth paragraph of the petition and is to this effect: That not being satisfied with the annual report of the Sherwood Distilling Company, nor with answers to certain enquiries propounded to the officers of the Sherwood Distilling Company, your petitioner and his brother, Louis F. Heublein, wrote a letter to the Sherwood Distilling Company on November 9th, 1908, in which was stated that this petitioner and his brother, Louis F. Heublein, had decided to have the books of the Sherwood Distilling Company regularly audited because the annual report and subsequent answers to a list of questions propounded were not sufficiently clear and intelligent for your petitioner and his brother, Louis F. Heublein, to comprehend the standing of the said Sherwood Distilling Company to their satisfaction.

The specific prayer of the petition is, that a writ of mandamus may be issued directed to John H. Wight, President of the Company, and to Wm. H. Wight, its secretary and treasurer, commanding them and each of them to *suffer* and *permit* Charles L. Hehl and the Baltimore Audit Company, its agents, servants and employees to have access to the books, accounts and records of the transactions of the company for the purpose of examining the same and of making a full report thereon to the petitioner, at his expense.

To the petition, the defendants interposed a demurrer and upon hearing, on February 23rd, 1909, the demurrer was overruled with leave to the respondents to answer within fifteen (15) days.

Subsequently, on the 9th of March, 1909, the defendants answered the petition, and as the matters relied upon in defense, are fully disclosed by this answer, and for the purposes of the case, the substantial averments thereof, are admitted by the demurrer to be true, they will be set out in this opinion, in so far as they are material.

The allegations, of the first, second, third, fourth, fifth, seventh, eighth and ninth paragraphs of the petition are admitted, but the matters contained in the remaining paragraphs are practically denied by the answer in resisting the application for the mandamus.

By the third paragraph it is averred that prior to making the purchase of their stock from the widow of the late Edward Hyatt in the year 1905, the petitioner and his brother called upon the defendants and inquired of them in regard to the affairs of the company and visited the distillery which was and is operated by the company. The defendants talked to the petitioner and his brother fully and freely in regard to the company's affairs, and the petitioner and his brother were fully advised of its business and financial condition, not only through the defendants, but as well, the defendants presume, through full and complete figures and data which were in the possession of the widow of Edward Hyatt.

It further avers that the petitioner and his brother were prior to the year 1905, and still are, engaged in the whole-sale whiskey business under the firm name of G. F. Heublein and Brother, the firm having its principal office in the City of Hartford, Connecticut. The firm is very extensively engaged in the business, and has been and is a large customer of the Sherwood Distilling Company, and deals very extensively in Sherwood whiskey, selling the same to the trade. ostensibly as straight Sherwood whiskey, and also blending or compounding the same with other liquors.

By the fourth paragraph, it is also averred that the prime object of the petitioners in acquiring their stock in the Sherwood Distilling Company was to enhance their own business as G. F. Heublein and Brother, through the close connection which they hoped to establish between its firm and the Sherwood Distilling Company. The defendants have done what they believed to be their duty to the Sherwood Distilling Company in firmly resisting all advances of the petitioner and his brother to the end aforesaid, and have continued their uniform course with regard to their customers of treating all alike, and giving to none special favors or advantages. That the petitioner and his brother have been greatly disappointed at this attitude on the part of the Sherwood Distilling Company and its officers, and in addition to their disappointment on this score, have been furthermore very naturally disappointed at the falling off in profits of the company. That such disappointment, together with the decrease in profits above referred to, has made the petitioners dissatisfied with their purchase of stock in the Sherwood Distilling Company, for which reason they desire to sell the same. On account of the Prohibition movement, which has gained great force of late, it is extremely difficult at the present time to market the petitioner's stock in the Sherwood Distilling Company, or to market an interest in any other liquor business. The petitioners therefore have adopted a course which they believe calculated to compel these defendants to purchase the stock by constantly harassing them with demands for detailed in-

formation which will involve a disclosure by the company of
its prices and customers, and finally by this proceeding which
carries with it a veiled threat of irreparable injury to the
business of the company.

By the fifth paragraph, it is further alleged that the busi-
ness of the manufacture and sale of whiskey, like most other
industrial operations, has its peculiarities, all of which are
very well known to the petitioner, they being extensively en-
gaged in the business. The defendants show that the books
of the Sherwood Distilling Company contain the names of all
of its customers, and the prices, at which goods have been
sold to the customers from time to time, and other matters in
relation to its business transactions, and while it might not
directly harm the Sherwood Distilling Company, were they
made public, such a course would in many cases result to the
injury and disadvantage of the customers of the company,
and would inevitably lead the customers to cease dealing with
the company.

In order to illustrate this matter further, the defendants
show that the Sherwood Distilling Company deals extensively
in its own whiskies after said whiskies have been sold by them
originally, frequently going into the market and buying up
large quantities of Sherwood whiskey in order to uphold the
price as well as to make a legitimate profit thereon. Were
the precise figures at which said company buys its goods and
at which it resells its goods to its customers to get in the
petitioner's possession, the petitioner and his brother could,
and these defendants aver that they intend to and would
make use of such information to the great detriment and
harm of the defendant corporation and to the special advant-
age and benefit of themselves, to wit, the firm of G. F. Heub-
lein and Brother. Furthermore, the petitioner could, were he
accorded the right to make copies of the matters and facts
contained in the books of account of the Sherwood Distilling
Company, ascertain therefrom not only the affairs of the
Sherwood Distilling Company, but of its customers, for the
reason that the greater part of the whiskey manufactured by

the company is held by them in bond for a number of years before the Government taxes are paid thereon. The goods are generally sold shortly after their manufacture, the evidences of their ownership being warehouse certificates, which are delivered to the purchasers thereof. When the purchasers of the goods in bond eventually resell the same, the record of such sales is placed upon the books of the Sherwood Distilling Company, and the warehouse certificates are returned to said company for cancellation and reissue or for the purposes of paying taxes on said goods.

It may therefore be seen that not only may the petitioner ascertain from the books of said company the names of its own customers and the prices at which goods are sold to its customers, but may ascertain the persons to whom its customers sell goods in bond. Were such information obtained by the petitioner and his brother, it would shortly result in the total destruction of the general business of the Sherwood Distilling Company, because its customers would not continue to deal with the company when the firm of G. F. Heublein and Brother had them at such a disadvantage; and at the same time the acquisition of such information would specially benefit the firm of G. F. Heublein and Brother.

The ultimate result would be to confine the business of the Sherwood Distilling Company very largely to the one firm G. F. Heublein and Brother, which result the petitioner and his brother can foresee, as well as these defendants, and with which result the petitioner is now threatening these defendants by the proceedings now pending.

By the sixth paragraph they aver that the action of the petitioners in demanding an audit by his own agent of the books of the defendant corporation and in instituting these proceedings is wholly lacking in good faith, and is not for the purpose of informing himself in a legitimate way as to the financial condition of the defendant corporation; that the primary object is to compel the defendants to purchase the petitioner's stock and that of his brother at a price far above its true value, and thus protect the defendants and

the other stockholders in said defendant corporation, with most of whom they are closely akin, from the very deplorable result which would inevitably come to pass as hereinabove set forth were the petitioners allowed to send accountants into the office of the Sherwood Distilling Company with untrammeled liberty to take from its books such information as they might see fit.

And lastly, by the seventh paragraph, they show that the defendants have always invited the petitioner and his brother to ask for whatever information they desire, and have repeatedly told them when they came to the office of the Sherwood Distilling Company that they might inspect the books themselves and might look therein whenever they pleased. The defendants further aver that they have given all information by way of annual statements and by way of personal interviews which they could give without injury to the business of the Sherwood Distilling Company, as above set forth, and they further state with the utmost emphasis that they have no motive in declining the request of the petitioner for an examination of the books of said Company excepting that above set forth.

The defendants are willing to furnish the petitioner with all possible information as to the accounts and affairs of the Sherwood Distilling Company, short of the names of its customers, the amount of its sales and prices (which latter information would be readily obtainable were the agents of the petitioners allowed to copy or take memoranda from its ledgers or day books), and if the petitioner desires information as to the expense account of said company, its salary account, or any other matters short of the facts above mentioned, he could have obtained the same and can now obtain the same without the interposition of this Honorable Court.

We have thus set forth at length the substantial averments of the answer, because the plaintiff demurred to it and the demurrer was sustained. And from the order sustaining the demurrer and directing the writ of mandamus to issue, as prayed by the petition, this appeal has been taken.

The main question for our determination on the appeal is, whether upon the facts of the case, as disclosed by the pleadings, the plaintiff is entitled to the relief sought by the petition.

There can be no dispute, as a general rule, that where a stockholder is given the right by statute, to inspect the books of a corporation, the Courts will enforce and grant this statutory right, by mandamus, to a stockholder who seeks information for proper and legitimate purposes.

In this State the right is secured by statute, Code, Art. 23, sec. 5, and by secs. 47, 48 and 49 of Chap. 240 of the Acts of 1908, the new corporation law, in so far, as the facts of this case bring it within the provisions of the last-named Act of 1908.

It is provided by Code, Art. 23, sec. 5, *supra,* that the president and directors of every corporation shall keep full, fair and correct accounts of their transactions, which shall be open at all times to the inspection of the stockholders or members, and they shall annually prepare a full and true statement of the affairs of the corporation, which shall be certified to by the president and secretary and submitted at the annual meeting of the stockholders or members.

This section of the Code (Art. 23, sec. 5) was before this Court for construction in *Weihenmayer* v. *Bitner,* 88 Md. 333, and we there held the right is given to him as a stockholder by statute, and is absolute and not made to depend upon any circumstance but the ownership of the stock. It was also said it is easy to see that there might be good reasons for refusing an application, for instance, if it was made for some evil, improper or unlawful purpose. And if such purpose were alleged and proved the writ would be denied.

The general rule as stated by this Court in *Weihenmayer* v. *Bitner, supra,* is supported by the weight of authority in the States and Supreme Court of the United States. *Foster* v. *White,* 86 Ala. 471; *Guthrie* v. *Harkness,* 199 U. S. 155. The right of inspection rests upon the proposition that

those in charge of the corporation are merely the agents of the stockholders, who are the real owners of the property, and the right of the stockholders to inspect the books of the company for proper and legitimate purposes is recognized by the well-considered authorities. *Cincinnati Volkshalt Co.* v. *Hoffmeister,* 62 Ohio St. 189; *Sellers* v. *Phœnix Iron Co.,* 105 Pa. St. 111.

In *Guthrie* v. *Harkness,* 199 U. S. 156; Mr. Justice Day, in delivering the opinion of the Supreme Court, said: "It does not follow that the Court will compel the inspection of the books under all circumstances. In issuing the writ of mandamus the Court will exercise a sound discretion and grant the right under proper safeguards to protect the interests of all concerned. The writ should not be granted for speculative purposes or to gratify idle curiosity or to aid a blackmailer, but it may not be denied to the stockholder who seeks the information for legitimate purposes."

In the case at bar the averments of the answer are admitted by the demurrer, and for the purposes of this case we are to treat them as true. Concisely stated, the respondents by their answer distinctly aver, first, that the action of the petitioner in demanding an audit of the books of the corporation and instituting these proceedings *is wholly lacking in good faith,* and is not for the purpose of informing himself in a legitimate way as to the financial condition of the defendant corporation. *That the primary object is to compel the defendants to purchase petitioner's stock and that of his brother at a price far above its true value.* Secondly, it avers that the purpose of the proposed examination is to harass the corporation and to coerce the appellants into buying this stock, and that the business of the company will be seriously injured if the alleged right of the appellees is granted. The answer further avers that the appellants have furnished the appellee with all information by way of annual statements and by way of personal interviews which they could give without injury to the business of the company, and it also states that they are willing to furnish all possible information

as to the accounts and affairs of the company which may be found necessary to furnish the appellee with the necessary information desired.

There are other facts and circumstances disclosed by the pleadings in the record to which we might refer, but we do not find it necessary for the decision of this case to pursue the subject further.

We are all of the opinion, from a careful examination of the case, that the Court below committed an error; both upon the law and facts, in sustaining the petitioner's demurrer and in directing a mandamus to issue as prayed by the petition. The case should be heard and tried on its merits, and if the averments of the answer can be sustained by proof the writ should be denied.

The manifest error of the appellee's position consists in the fact that it absolutely ignores the restrictions and safeguards recognized by the Courts in the exercise of the stockholder's statutory right to inspect the books of his corporation and the limitations upon that right, in the granting of the writ of mandamus.

As was said by this Court in *Weihenmeyer* v. *Bitner, supra,* it is easy to see that there might be good reasons for refusing an application, for instance, if it were made for some evil, improper or unlawful purpose. And if such purpose were alleged and proved, the writ would be denied.

So without discussing this case further, we are of the opinion that this case should have been heard upon its merits, and the Court below was in error in sustaining the plaintiff's demurrer to the respondents' answer, and also in directing the writ of mandamus.

For the reasons given the order of the Court passed on the 14th day of May, 1909, will be reversed, and the cause remanded in order that the case may be tried on its merits.

> *Order reversed and cause remanded, with costs to the appellants.*