**N V F COMPANY, a Delaware corporation, Plaintiff,**

v.

**SHARON STEEL CORPORATION, a Pennsylvania corporation, George Perrault, Jr., an individual, and Kenneth O. Swanson, an individual, Defendants.**

Civ. A. No. 68–1478.

United States District Court
W. D. Pennsylvania.

Jan. 22, 1969.

**1092**

Ralph H. Demmler, Walter T. Mc-Gough, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

Malcolm Anderson, Phillip A. Faix, Jr., Griggs, Moreland, Blair & Anderson, Pittsburgh, Pa., for plaintiff.

## OPINION

DUMBAULD, District Judge.

Defendant, Sharon Steel Corporation, is apparently about to be gobbled up in one of the "conglomerate mergers" so prevalent today. One potential acquisitor is plaintiff, NVF, connected with the enterprises of one Victor Posner. Another is Cyclops, another steel company. The management of defendant, perhaps rightly, favors Cyclops, and opposes NVF so resolutely that it wishes to have no part in forwarding NVF's efforts, even by making available to NVF the shareholder list of Sharon in order that NVF might communicate its offer to Sharon's stockholders.[1]

NVF, owning 5000 shares of Sharon, applied to Sharon for the stockholders' list of Sharon, and upon refusal, brought suit in this Court pursuant to Pennsylvania statutory corporation law. The pertinent provision is Act No. 216, July 20, 1968, sec. 11, amending sec. 308 of the Business Corporation Law of May 5, 1933, as amended, 15 P.S. § 1308.

The Pennsylvania statute authorizes a stockholder access to the list for any proper purpose. Proper purpose is defined as "a purpose reasonably related to such person's interest as a shareholder".

---

1. As Mr. Justice Robert H. Jackson said in Duckworth v. Arkansas, 314 U.S. 390, 402, 62 S.Ct. 311, 317, 86 L.Ed. 294 (1941): "I do not suppose the skies will fall if the Court does allow Arkansas to rig up this handy device for policing liquor on the ground that it is not forbidden by the commerce clause, but in doing so it adds another to the already too numerous and burdensome state restraints of national commerce and *pursues a trend with which I would have no part.*" (italics supplied).

The statute likewise provides that in the event of refusal the shareholder may apply to the Court of Common Pleas of the county in which the registered office of the corporation is located for an order to compel such inspection. Such Court of Common Pleas is "vested with exclusive jurisdiction" to determine whether or not the person seeking inspection is entitled to the inspection sought. "The court may summarily order the corporation to permit the shareholder to inspect the share register" or may impose appropriate terms.

The statute thus provides that such relief is to be given "summarily",[2] and that the burden of proof with respect to propriety of purpose is on the defendant.

Defendant contends, first, that this Court has no jurisdiction, by reason of the exclusive jurisdiction of the Court of Common Pleas conferred by the statute.

■ However, we believe that this provision is remedial or procedural, and that a federal court may furnish its own equitable remedy. Stern v. South Chester Tube Co., 390 U.S. 606, 609–610, 88 S.Ct. 1332, 20 L.Ed.2d 177 (1968). The statutory remedy is not part of or a limitation upon the scope of the substantive right itself. By analogy to wrongful death act cases, federal jurisdiction is proper. Dumbauld, The Constitution of the United States (1964) 392.

Defendant next contends that the purpose for which NVF seeks the list is improper, and is not related to a stockholder's legitimate interests.

NVF's purpose is to circulate to Sharon stockholders an offer on the part of NVF to buy Sharon stock in exchange for debentures and warrants to be issued by NVF.

Defendant cogently argues that this effort to peddle NVF securities is just like using a stockholders' list to sell life insurance or magazine subscriptions[3] or other commodities or services unrelated to NVF's status as a stockholder. If NVF owned no Sharon stock, it could not obtain use of the list for such purposes. Can it better its hold by buying a few shares of stock?

■■ We begin with the proposition that Pennsylvania law, both statutory and decisional, requires such stockholders' requests to be disposed of summarily. We take it this is substantially equivalent to the speed of granting an injunction pendente lite without the complete adjudication of complex issues. The law looks more favorably upon requests for access to the stock register than for access to other company records. Goldman v. Trans-United Industries, Inc., 404 Pa. 288, 292–293, 171 A.2d 788 (1961).

It must be remembered that like jury trial or the right to vote, the right to a stockholders' list is an incidental or preliminary right which stands sentinel over other rights.[4]

2. The practice of disposing of certain matters "summarily" has a long history. Besides the piepowder courts in English precedent, summary procedure was introduced in canon law by Pope Alexander III, who ordered "simpliciter et de plano, sine figura judicii, absque judiciorum et advocatorum strepitu procedere", and was further developed by the Clementine "Saepe contingit" in 1306. See Dumbauld, Interim Measures of Protection in International Controversies (1932) 22.

3. Many organizations do sell their membership lists to publishers or other direct mail solicitors. An amusing article in the New Yorker magazine about such lists indicates that the Republican

National Committee got its best results in soliciting funds by use of a list of customers of a seller of cloths for polishing automobiles. The author depicts the image of a sturdy supporter of the free enterprise system polishing his Rolls-Royce before sending in a contribution.

4. "The right to fair trial is the right that stands guardian over all other rights." Dennis v. United States, 339 U.S. 162, 173, 70 S.Ct. 519, 524, 94 L.Ed. 734 (1950). The right to vote "is regarded as a fundamental political right, because preservative of all rights." Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886).

The statutory right accorded a stockholder to communicate with other shareholders regarding matters of common interest as stockholders is much similar to freedom of speech. Control of the channels of communication by defendant is involved, rather than the merits of the matters to be discussed by stockholders seeking access to such channels for communicating with other stockholders.

It is conceded that anything which may properly come before a stockholders' meeting for deliberation or vote is a proper purpose for seeking a stockholders' list. A contest for proxies to obtain control of the management of a company is concededly a proper occasion for obtaining access to the list. 404 Pa. at 293, 171 A.2d 788.

■ Obtaining proxies to vote someone else's stock is perhaps a less certain mode of gaining control of a company than obtaining ownership of a majority of the outstanding shares. It follows that making an offer to buy stock is a proper purpose for seeking access to the list of shareholders. This has been held in Delaware under a substantially identical statute.

Of course, as defendant argues, plaintiff could buy up Sharon stock on the market at the market price, for real money, without use of a stockholders' list, and without any need for a stockholders' meeting.

But in modern corporate usage it is customary for companies to acquire stock control of other companies by issuance of their own stock or other securities.[5]

We therefore believe that corporate usage does not warrant basing a distinction on whether an offer to buy stock is made for cash or for other quid pro quo. Since an offer to buy other stock for cash is a proper purpose, we conclude that an offer to buy it in exchange for the purchaser's paper is equally proper.

■ Defendant finally contends that if this Court does exercise jurisdiction as a court of equity plaintiff is barred by the doctrine of clean hands, by reason of alleged violations by plaintiff of the federal laws regulating securities and exchange transactions. Defendant argues that to grant plaintiff access to the stockholders' list would amount to complicity by the Court in an abuse of process in furtherance of illegal conduct. The Court should not, defendant argues, excise from the intertwined mass of facts relating to the proposed acquisition the narrow issue of obtaining the stockholders' list, which is merely the instrumentality for consummating a fraud or illegality.[6]

In support of this contention defendant points out that plaintiff has manipulated its own stock upward to make its apparent value greater in order to encourage Sharon stockholders to accept NVF's offer; that it encouraged others to buy Sharon stock in support of NVF's bid for control of Sharon; that it juggled accounting methods to give the impression that NVF was making profits rather than losing money; that NVF will require and use Sharon's profits in order to service the debt on the NVF obligations issued under the offer for Sharon stock; that NVF's proposed warrants

5. See Carl W. Schneider, "Acquisitions Under the Federal Securities Acts", 116 U. of Pa.L.Rev. (No. 8, June 1968) 1323, 1334–1335.

6. As stated above, we believe Pennsylvania law calls for separate and summary treatment of the access issue. The same conclusion is reached under federal law, by reason of the preliminary and instrumental nature of this step. To install a telephone does not guarantee the veracity or wisdom of all messages which it carries. In free speech cases regulation of the *man-* *ner* of speech is to be distinguished from censorship of its *contents.* Dumbauld, The Bill of Rights (1957) 123, 128. The same *distinction is* applicable here, and warrants summarily granting access to the channel of communication with other stockholders, while reserving for future determination on their merits (in the marketplace, or the SEC or the courts) the issues *regarding the* advantageous or fraudulent character of the message to be communicated.

for NVF stock are at a price far above NVF's market price; and similar matters.

These issues, we believe, go to the merits of NVF's offer, and might well result in its rejection by Sharon stockholders, especially if Sharon management advises its stockholders accordingly; but do not properly debar plaintiff from a hearing on its proposition by Sharon's other stockholders. We think the offer is a relevant matter, under accepted corporate usage, in the current "merger" technique.

Accordingly an order should be granted permitting plaintiff access to the defendant's stockholders' list.

## ORDER

And now, to-wit, this 22nd day of January, 1969, upon consideration of the Plaintiff's Motion for Preliminary Injunction, and having considered the oral arguments, pleadings, affidavits, briefs, exhibits, and other documents submitted by counsel representing the parties, it is hereby ordered and decreed that Plaintiff NVF Company is permitted immediately to examine, to copy, and to make extracts from the share register of Defendant Sharon Steel Corporation. To expedite this decree, any officer or employee of Plaintiff, NVF Company, is hereby empowered to go to the principal office of Sharon Steel Corporation and be presented and be furnished with the most up-to-date share register at said place at a time no later than 10 A.M. Thursday, January 23, 1969. In addition, said officer or employee is hereby authorized to copy, or duplicate the information and material appearing in said share register and any other list of the shareholders of Defendant corporation with any modern electronic and/or photographic equipment and said Defendant will provide any electricity or power source and equipment necessary to run said machine and said officer or employee shall be permitted during the examination and duplication process to remain on the premises of said corporate defendant during the usual business hours from 9 A.M. to 5 P.M., or to take said share register from the premises in any manner mutually agreed upon by the parties. Furthermore, said officer or employee shall be permitted to return on succeeding days during the hours of 9 A.M. to 5 P.M. until said officer or employee is satisfied that he had the opportunity to examine fully and to copy all or any part of the contents of said share register. During the said hours, the Defendant Sharon Steel Corporation shall cause said share register to remain open for said examination and copying by said officer or employee of NVF Company.