Delo H. CASPARY, Appellant,

v.

The LOUISIANA LAND AND EXPLORATION COMPANY, Appellee.

No. 83–1343.

United States Court of Appeals,
Fourth Circuit.

Argued April 14, 1983.
Decided May 11, 1983.

---

John Henry Lewin, Jr., Baltimore, Md. (Benson Everett Legg, Venable, Baetjer & Howard, Baltimore, Md.), for appellant.

Francis B. Burch, Jr., Baltimore, Md. (Robert J. Mathias, David Clarke, Jr., Piper & Marbury, Baltimore, Md., Cahill, Gordon & Reindel, Washington, D.C.), for appellee.

Before WINTER, Chief Judge, and MURNAGHAN and ERVIN, Circuit Judges.

MURNAGHAN, Circuit Judge:

At common law, a stockholder in a Maryland corporation enjoyed, regardless of the substantiality of his shareholding, a right to inspect corporate records, including a book listing all of the stockholders, simply upon the showing of a proper purpose. *Parish v. Maryland and Virginia Milk Producers Ass'n,* 250 Md. 24, 88, 242 A.2d 512, 547 (1968). In 1868 a general business corporation law was adopted by the Maryland General Assembly which, in Article 26 of the Annotated Code of Maryland § 5, addressed the matter of rights to inspect corporate records generally and in § 67 the matter of similar rights to inspect stockholder lists.[1]

That legislation eliminated the proper purpose limitation existing at common law. Consequently, after 1868 the statute afforded everything the common law had granted to the stockholder and more, since it too guaranteed the right of access to the stock ledger, yet freed the stockholder from the necessity of pleading and proving a proper purpose. Thereafter in 1908 there was a general revision of the corporate article. The pertinent section of that codification, Article 23 § 73 of the Annotated Code of Maryland (identified in the 1911 Annotated Code of Maryland as the successor to the Article 26 §§ 5 and 67 statutes enacted in 1868), permitted a stockholder or stockholders holding 5% of the capital stock to inspect the stockholder list. The section so providing, in its present form, now appears in the Corporations and Associations Article of the Maryland Annotated Code as § 2–513.[2]

Delo H. Caspary, alleging a proper purpose, namely, the desire to solicit proxies in order to achieve a change in management of a corporation of which he is a shareholder, and with whose operations he is dissatisfied, has sought to obtain access to the stock ledger of the Louisiana Land and Exploration Company, a Maryland corporation. The corporation is a large one, it being estimated that, while Caspary's holdings of stock in the corporation are worth $2,000,000 to $3,000,000, a 5% ownership of stock would have an aggregate value of approximately $55,000,000.

The corporation has refused to permit inspection of the stock ledger on the grounds that § 2–513 abrogated the common law, and set up requirements which Caspary does not satisfy.

That position conflicted with Caspary's professed understanding that the statutory provisions were in addition to, not in replacement of, the common law. Not surprisingly, on April 4, 1983, the present di-

---

1. The 1868 statute substantially broadened what had theretofore been the common law rule. *Parish, supra,* 250 Md. at 89–90, 242 A.2d at 547–48.

2. In 1951, an additional restriction on the statutory right of access of the stockholder to the stock ledger was imposed. A six months' holding period had first to be met.

versity case was instituted by Caspary in the United States District Court for the District of Maryland to secure access to a list of stockholders. The district court, on April 8, 1983, stated its conclusion that the failure to meet the requirements of § 2–513 rendered Caspary not entitled to the relief he sought. Judgment dismissing the complaint, accordingly, was entered for the company. An immediate appeal was taken. The degree of urgency is high in view of Caspary's wish to conduct a proxy fight to obtain shareholder votes to be cast at the election of directors scheduled to be held at an annual meeting, the date for which has been fixed as May 12, 1983. We accordingly have heard the appeal on an expedited basis on Thursday, April 14, 1983. That afternoon, following conclusion of oral argument, we announced our decision affirming the judgment of the district court, 560 F.Supp. 855. Chief Judge Winter dissented from the decision reached by Judges Murnaghan and Ervin. We noted that written opinions would follow.

Addressing the merits, we have been cited to, and have found no Maryland authority squarely disposing of the matter to which we can turn for ready disposition. While presented by diligent and imaginative counsel appearing for Caspary with arguments based on supposed policy considerations and expounding a view of history concerning the rugged capacity of the common law to withstand repeal or abrogation by a statute dealing with the same subject matter, we have been directed to no Maryland authority (other than the district court opinion in the case *sub judice*) which really addresses in the context of stock ledger inspection rights the position for which Caspary argues.

On the other hand, Louisiana Land has had the good fortune to be able to cite two cases construing the Maryland law which give strong indications of the result the Maryland Court of Appeals would reach if it were to address the question presently before us. First we turn to *Parish v. Maryland and Virginia Milk Producers Ass'n, supra.* There, the question for resolution was whether the statute, by analogizing a member in a membership corporation to a stockholder in an ordinary business corporation, set up a prerequisite of a group of 5% of the members insisting on production to trigger a successful demand for a list of all members. The court in *Parish* held that the analogy was not apt and that, consequently, the 5% requirement had no application to a membership corporation. The opinion for the Court of Judge Wilson K. Barnes, while, therefore, not concerned with a *stockholder's* rights of inspection of a company's records, nevertheless, provided two salient insights into how the Maryland Court of Appeals might be expected to resolve the issue which confronts us.

First, in a passing allusion the court identified as the purpose of the 5% restriction the prevention of *"an abuse* of the common law right of a single stockholder to demand inspection of books, etc., with possible attendant substantial expense when the amount of the stockholding was insignificant compared to the whole stock structure. It was, in short, to prevent 'strike' suits by litigious stockholders holding less than five percent of the corporate stock ...." *Parish, supra,* 250 Md. at 90–91, 242 A.2d at 549 (emphasis in original). That observation tends to support Louisiana Land's side of the case, suggesting as it does that the common law was to yield to the statute, yet it is but a *dictum,* and, as such, could perhaps be distinguished if it were at odds with another stronger contra-indication, either *obiter* statement or persuasive policy consideration.[3]

---

3. In fact, however, the Maryland Court of Appeals in *Homer v. Crown Cork & Seal Co. of Baltimore City,* 155 Md. 66, 76, 141 A. 425, 430 (1928) recognized that "[e]ven a shareholder does not enjoy the unlimited right to demand and receive information in respect to corporate affairs," citing the pertinent sections in the Corporations Article of the Annotated Code, especially the section setting the 5% requirement for inspection of the stock ledger. *Cf. Wight v. Heublein,* 111 Md. 649, 657, 75 A. 507, 509 (1910) ("In this state the right [of access to corporate records] is secured *by statute* (Code Article 23, § 5) ....") (Emphasis supplied).

The second insight to be derived from *Parish* is more, however, than *dictum.* The member there seeking a membership list had established the existence of a proper purpose for the request.[4] Accordingly, if Caspary's contention in the present case were sound, the court in *Parish* unnecessarily labored (250 Md. at 86–93, 242 A.2d at 547–550) to rule that a member in a membership corporation is not to be equated or analogized to a stockholder. That question would not even have arisen if a stockholder, and so, *a fortiori,* a member (present as he would be only by analogy to a stockholder) were free of the necessity for a 5% showing upon demonstration of a proper purpose. The whole objective of the court's inquiry was to determine whether the 5% requirement had to be met. Obviously, the Maryland court assumed it would apply were Parish a stockholder in a business corporation rather than a member in a membership corporation.

Furthermore, that intimation from *Parish* is fortified by the recent decision of *Rosengarten v. Buckley,* Civ. No. HM–80–2935 (D.Md., February 23, 1982, Murray, J.). In responding to a corporation's insistence on the security required of a stockholder holding less than 5% of the stock (Maryland Rules of Procedure § 328(b)), the shareholder sought to have the court condition the security on the provision to him of a shareholder list. Judge Murray declined to do so, saying:

Not only does Maryland law not provide for such a procedure, but another statute expressly limits those persons entitled to a shareholder list to persons who hold more than five percent of a corporation's stock. MD.CORP. & ASSOC.CODE ANN., § 2–513. The plaintiff's requested procedure would thus endow him with a right he does not possess under Maryland law and one that the legislature of this state has clearly chosen not to give him.

■ Caspary would construe the omission by Judge Murray of any mention of a common law right to inspect stock records for a proper purpose and without meeting the statutory 5% requirement as an inadvertent oversight. Judge Murray is simply too careful for such a suggestion to be lightly accepted. It is far more probable that, if Judge Murray had entertained any belief that a common law right existed, he would have explored the matter of whether the party seeking the stockholder list had a proper purpose. We read the omission as evidence of Judge Murray's belief that there was no such common law right. Thus, Judge Murray denied the request on the grounds that § 2–513 expressly limited entitlement to those persons holding 5% or more of the corporation's stock.[5]

To counter those Maryland authorities, Caspary relies especially on the New York law.[6] Aside from the fact that we are

4. In *Parish, supra,* 250 Md. at 91, 242 A.2d at 549, it is observed that "under the allegations of the complaint it appears that the purpose of the demand for inspection was an entirely proper one intended for the ultimate benefit of the Association itself."

5. The decision of Judge Edward S. Northrop in the district court constitutes an authoritative source as well. In determining state law in diversity cases where there is no clear precedent, courts of appeal are disposed to accord substantial deference to the opinion of a federal district judge because of his familiarity with the state law which must be applied. *E.g., Hartford v. Gibbons & Reed Co.,* 617 F.2d 567, 569 (10th Cir.1980).

Here, however, we have a panel on appeal which includes two judges who also have Maryland antecedents. Their views differ as to the proper outcome of the case. In such cir-

cumstances deference to the opinion of the one who disagrees with the district judge should serve to neutralize any support deriving from merely the existence, as distinct from the contents, of Judge Northrop's opinion. As to the latter, however, obviously the panel majority is at one with him.

6. The law of other jurisdictions is not as one-sided as the dissent would suggest. *See Neiman v. Templeton, Kenly & Co., Ltd.,* 294 Ill. App. 45, 13 N.E.2d 290 (1938); *Morris v. Broadview,* 385 Ill. 228, 233–34, 52 N.E.2d 769, 771 (1944); *Daurelle v. Traders Federal Savings & Loan Assn.,* 143 W.Va. 674, 689, 104 S.E.2d 320, 330 (1958) ("It indicates clearly that the Legislature by the enactment of the current statute intended to abrogate, or at least to limit, the common-law and statutory rights of a stockholder of a joint stock corporation to the extent indicated by the language of the statute

bound to determine the law of Maryland and not the law of another state, the New York statute held not to have supplanted or replaced the common law right specified that "[n]othing herein contained shall impair the power of courts to compel the production for examination of the books and records of a corporation." The power of the courts particularly operates to develop, enforce and maintain the common law.

There is no similar Maryland statutory language preserving to the courts the continued right to compel production of the stock ledger as theretofore permitted by the common law.[7] It is true, of course, that the Maryland Constitution guarantees the continued enjoyment by the people of the common law "subject, nevertheless, to the revision of, and amendment or repeal, by the Legislature of this State." *In Re Davis,* 17 Md.App. 98, 102, 299 A.2d 856, 859 (1973) makes it all very clear:

> The common law, like Acts of Assembly, is subject to the control and modification of the legislature, and may be abrogated or changed as the General Assembly may think most conducive to the general welfare.... [T]he common law is subject to change by the legislature ....

That truism, however, affords no solace similar to that provided by the New York statute to someone arguing that a common law rule has not been abrogated by statute. It merely sets forth the general question posed in each such case, namely, whether or not modification or abrogation of the common law by statute has occurred.[8]

and to give him only such rights of examination and inspection of the records of the corporation as are expressly mentioned in the statute.").

In short, law elsewhere goes both ways, and does not suffice to outweigh the indications flowing from respected Maryland sources as to what the law is in that state.

7. It is important to note that, when, in 1951, the Maryland Legislature amended the statute now codified as § 2–513, to add a six months' holding requirement, it employed to some extent the American Bar Association Model Business Corporation Act. 1 Fletcher, *Cyclopedia of Corporations* § 2.2 (Rev.Vol.1974). The "some extent" did not reach to the Model Business Corporation Act's proposed language reading:

> Nothing herein contained shall impair the power of any court of competent jurisdiction, upon proof by a shareholder of proper purpose, irrespective of the period of time during which such shareholder shall have been a shareholder of record, and irrespective of the number of shares held by him, to compel the production for examination by such shareholder of the books and records of account, minutes and record of shareholders of a corporation.

It seems most significant that Maryland omitted the very language supporting the New York rule. Such a difference in choice indicates, indeed mandates, a difference in result.

8. The opinion in *Lutz v. State,* 167 Md. 12, 172 A. 354 (1934) observes that where "a statute and the common law are in conflict, the common law yields to the statute to the extent of the inconsistency," and "a statute which deals with an entire subject matter is generally construed as abrogating the common law as to that subject." On the facts of the *Lutz* case the common law crime of maintaining a bawdyhouse was deemed to survive, despite statutory enactments dealing with the subject, precisely because the statute and the common law "were directed to different objects." The statute did not address the subject matter covered by the common law.

> It is also apparent from a comparison of the statute and the common law relating to keeping a bawdyhouse that they were directed to different objects, in that while the common law dealt with a specific nuisance that of maintaining a blatant and noisome establishment for licentious commerce irrespective of whether such commerce involved hire or payment, Id., Wharton on Crimes, § 1728, the statute is directed to the suppression of sexual vice and perversion practiced for gain, and condemns equally those employed in connection with the commerce, the patrons of the establishment used therefor and the keeper thereof.

167 Md. at 16, 172 A. at 356.

In the context of differences between statute and common law, the *Lutz* court had this to say (quoting 25 R.C.L. 1054):

> It has been said that statutes are not presumed to make any alterations in the common law further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law. The rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language. In order to hold that a statute has abrogated common law rights existing at the date of its enactment, it must clearly appear that they are repugnant to the act, or the part thereof invoked, that their survival would in

Reference by counsel for Caspary to Arthur W. Machen's imposing treatise on the *Modern Law of Corporations* (1908) is resort to extremely respected authority. Unfortunately, however, the section cited, § 1100 at p. 896, is not illuminating for present purposes. It states that a statute conferring "upon shareholders a *limited* right to inspect the company's books should not be construed to restrict by implication their common-law rights." (Emphasis supplied). The question still remains as to whether the statute here is, in fact, so limited that it was not intended by the legislature, as part of a general, wide-ranging statutory codification, to replace common law rules dealing with the same subject matter. Machen forthrightly acknowledges that the answer in each particular case "must depend on the scope of the statute." *Id.,* § 1109, at pp. 902–03.[9]

5 Fletcher, *Cyclopedia of Corporations,* § 2215.1 (Rev.Vol.1976), also cited by Caspary, is not particularly helpful for similar reasons, and, indeed, rather supports his opponent. It observes that the statutes in many cases are not merely a reenactment of the common law, but rather enlarge the right and remove common law restrictions. It further points out the trend away from an earlier tendency to expand the inspection rights of shareholders beyond their rights at common law in favor of limitations restricting the rights.

It is by no means an irrelevancy to observe that in Maryland both directions alluded to by Fletcher have been followed. The 1868 broad expansion of rights to inspect the stock book appears to have occu-

---

effect deprive it of its efficacy and render its provisions nugatory.
167 Md. at 15, 172 A. at 356.

Consequently, *Lutz,* while giving each of the parties comfort, if he or it first assumes the correctness of his or its ultimate position, leaves to us the decision whether the statute dealt with the entire subject matter or whether it did not address the subject matter covered by the common law.

The later case of *State v. Gibson,* 4 Md.App. 236, 245–47, 242 A.2d 575, 581–82 (1968), *affirmed,* 254 Md. 399, 254 A.2d 691 (1969), in an opinion by Robert C. Murphy, presently Chief Judge of the Maryland Court of Appeals, does much to point the way. Statutory manslaughter by automobile was deemed to have replaced, and not merely to have supplemented or provided an additional alternative to, common law involuntary manslaughter. The opposite result inasmuch as the Legislature intended to deal with an entire subject matter was rejected as incongruous. All the arguments urging strict construction of statutes in derogation of common law are canvassed, yet held unavailing in light of the cardinal rule in the construction of statutes: effectuation of the real and actual intention of the Legislature.

We find it equally difficult to accept that the General Assembly of Maryland in 1868 meant to keep the common law right of inspection of the stock ledger alive when the statute it passed did everything for the shareholder that the common law did and more. That was a classic case of "deal[ing] with an entire subject matter," a point principally relied on in *Gibson.*

**9.** Caspary also quotes from H.M. Brune, *Maryland Corporation Law and Practice* § 383, p. 445 n. 26 (Rev.Ed.1953):

The further restriction of the statutory right under the 1951 revision would permit a persuasive argument to a court of equity to grant an application by a substantial stockholder for leave to examine the books, although he had not held his stock for a sufficient period or could not otherwise qualify under the statute.

The difficulty there, however, is that the remarks were aimed only at the six months' holding requirement added to the statute in 1951 and not to the 5% requirement introduced in 1908. Indeed, by the use of the adjective "substantial" before "stockholder," the author seems to accept that, whatever might be the case as to the newly added six months' holding requirement, he was proceeding on the assumption that the 5% necessity still generally obtained.

It should be pointed out that the quotation from Brune is from a footnote to text which states:

The statutory right, however, is *possibly* supplemental to the common-law right of reasonable access to by-laws, minute books and stockholders' lists, and *may* not supersede such right altogether.

(Emphasis added).

That is no ringing endorsement of the Caspary position of course. Mr. Brune's heart could hardly have been in it, for, when he later appeared as counsel for the plaintiffs in *Parish,* he did not even advance the contention despite the fact that the defendant corporation set forth the opposing arguments in its brief. Nor, as we have pointed out, did the Maryland Court of Appeals find any merit in the point.

pied the field, abrogating the common law. Then, in the second phase, when in 1908 a restriction was imposed, it was only the 1868 statute which was in place at the time of enactment, and its amendment by the 1908 statute has not been questioned, and could not be for any reason apparent to us.[10]

A principal obstacle for Caspary indeed lies in the fact that, in 1868, in a general codification of the statutory law dealing with business corporations, the Maryland General Assembly imposed on a corporation the responsibility to maintain a stock ledger, and provided to a stockholder, holding as little as a single share of stock, regardless of the percentage of his holding, a right to inspect the stock ledger, regardless of purpose. *See* Article 40, Revised Code of Maryland § 67 (1878); Article 23 Annotated Code of Maryland (1904 ed.) § 80. That was hardly the *limited* right to inspect referred to by Machen. Every stockholder was accorded an unlimited right of access to the stock ledger, with no responsibility for showing any purpose. See *Parish, supra,* 250 Md. at 90–91, 242 A.2d at 549. Caspary

in his Brief freely acknowledges that, under the 1868 statute a proper purpose was not required and that "[t]he right to the list was absolute, conditional only upon the ownership of the stock."

In point of indisputable fact, the statute covered everything which the common law allowed in the way of stock book inspection and went further.[11] From 1868 to 1908, consequently, there was absolutely no occasion for anyone to seek recourse to what had been the common law prior to 1868. In every imaginable case the statute would do at least as well; in some it would do better.[12]

■ When a general codification has occurred, a statute fully occupying the field covered by the common law, as certainly was here the case, replaces and extinguishes the common law. *See Lutz, supra,* 167 Md. at 15, 172 A. at 356 ("A statute which deals with an entire subject matter is generally construed as abrogating the common law as to that subject."). Otherwise the law becomes cluttered with moribund rules serving no useful purpose, yet obviously having

---

10. H.M. Brune, *Maryland Corporation Law and Practice* § 3, p. 5 n. 36 (Rev.Ed.1953) states:
This Act [the 1908 revision] was a landmark in the development of state corporation statutes and was in part copied in certain other states. See Ballantine, Calif.Corp.Laws (1932), esp. preface, p. v. It was largely the work of the late Joseph C. France, Esq., author of "Principles of Corporation Law."
France, in his *Principles of Corporation Law* § 58, p. 101 (1914), had this to say:
Prior to the revision of 1908, it was the right of any stockholder to demand a personal inspection of the books at any reasonable time . . . . The present law limits this right to any person or persons holding in the aggregate five per cent. of the capital stock, or of any class thereof if two or more classes have been issued.
France certainly meant that the 1868 statute was no longer in effect. It is unlikely, to the point of impossibility, that France believed there was, nevertheless, a common law right to inspect, even by a shareholder with less than 5% simply upon showing a proper purpose, yet said nothing about it. He no doubt believed the 1908 statute controlled, and had not been intended to revive a contradictory common law right abrogated in 1868.

11. The dissent emphasizes for purposes of the argument it advances that the 1868 statute

"broadened" the common law right of inspection, and so should not be deemed to have abrogated the common law. With respect, that is no more than a play on words. For every action there is an equal and opposite reaction. Here at least the statute may as well be looked at as one "narrowing" the corporation's right to restrict access to documents, including the stock ledger.

12. To illustrate why the circumstances lead inescapably to a conclusion that, in 1868, abrogation of the common law had occurred, imagine a plaintiff, in 1870, 1880, or 1890, suing to enforce his right of access to the stock ledger. Of sturdy stock, he disavows any intention to resort to that new fangled invention of the devil, statutory law. He insists on having his good old common law right of inspection.
Judges may have been less busy then than they are today. Nevertheless, it is hard to imagine one taking kindly to the idea that he would have to sit through a day of heated legal battle over whether the plaintiff's purpose was proper, when the legislature had written out of the law that very requirement. The judge surely would peremptorily have disallowed the contention that the common law right remained extant and enforceable.

a great potential for mischief if they automatically spring back to life when any subsequent change in the statute takes place. There was a lapse of forty years between 1868 and 1908. It simply ignores reality to ascribe to the Maryland General Assembly an unstated assumption, when it amended the statute to require a 5% holding to exercise the formerly unlimited right of inspection, that it would simultaneously be resuscitating *sub silentio* a common law provision given a decent burial four decades before. Rather, abrogation was the legislative intent.[13] The ascription of such an unexpressed assumption makes very little sense when it is appreciated that it would greatly reduce the effectiveness of the 1908 legislation. While a stockholder with less than 5% could, on Caspary's theory, be obliged to prove a proper purpose, few would appear likely to be acting malevolently or contrary to corporate best interests.[14] Hence most requests would, in the end, be successful, making the 5% requirement largely illusory. In the language of *Lutz, supra,* n. 7, Caspary's contention, if successful, would in effect deprive the 1908 statute of its efficacy.[15]

In 1950, in preparation for what became the substantial 1951 revision of the Corporations Article of the Annotated Code of Maryland, a distinguished Revision Commission[16] prepared a report. The reporter to the Commission, C. Keating Bowie, Jr., an accomplished member of the practicing Maryland Bar, had this to say in his Explanatory Notes on the subject of stockholder inspection rights:

Aside from specifying with greater particularity the papers and records which shall be available for inspection, this section makes only one important substantive change in the present law. In addition to the requirement that a stockholder have 5% of the outstanding stock of any class in order to justify an inspection of certain records, as provided in the present law, the proposed section also re-

13. Where the intent to abrogate is discerned, the language of Maryland Corporations and Associations Article § 1–102(c) has no pertinence. It states:

The requirements of this article are in addition to and not in substitution of any other requirements of law relating to any particular corporation or class of corporations.

There is not another requirement of law extant when it has been previously abrogated by the legislature.

14. A statute by its nature operates prospectively and deals with the matter it pertains to on a generalized basis. So viewing the matter, the Maryland General Assembly should be deemed to have appreciated that most shareholders have the well-being of their corporation at heart, and so their purposes would be proper.

15. It is elementary, of course, that, if the Legislature had wanted, in 1908, to revive the pre-1868 common law it could, by appropriate use of language, have done so. Thus, in *Neal v. State,* 45 Md.App. 549, 413 A.2d 1386 (1980), the Maryland Court of Special Appeals, in dealing with the common law crime of indecent exposure, which had been supplanted by the language of a 1967 statute, held that it was revived by a 1977 enactment. The reason, however, was expressly because the General Assembly said that such was its intent. After a laconic reference to a common law theory of revival where an abrogating statute has been repealed, the court held: "*Even without the*

*revival principle to guide us,* the express intent of the Legislature is unmistakable." *Neal, supra,* 45 Md.App. at 551, 413 A.2d at 1387–88. (Emphasis supplied).

The 1977 statute explicitly provided that:
Every person convicted of the common-law crime of indecent exposure, is guilty of a misdemeanor and shall be punished by imprisonment for not more than three years or a fine of not more than $1,000, or both. *Id.* The Maryland Court of Special Appeals reasonably concluded: "By alluding to the common law crime, however, its understanding and its intent were manifest." *Neal, supra,* 45 Md.App. at 551, 413 A.2d at 1388.

Two aspects of *Neal* are consequently also manifest. First, it did not rely on *sub silentio* revival. Second it highlights the distinction from the case *sub judice* by placing its trust in what the Legislature clearly said it meant. Significantly absent in the 1908 statute is any revival language. The General Assembly could have said: "Besides introducing a 5% requirement for exercise of the existing unlimited right of inspection, we also intend to allow the common law right of inspection to any stockholder who demonstrates a proper purpose." But that the Legislature did not say, and that completely sets the case apart from *Neal.*

16. Judge William C. Walsh, a former member of the Maryland Court of Appeals, was the chairman.

quires that the stockholder shall have held such stock for a period of at least six months.

Reporter's Explanatory Notes printed in H.M. Brune, *Maryland Corporation Law and Practice,* 677, 691 (Rev.Ed.1953).

It would do a great injustice to ascribe to Mr. Bowie a conscious differentiation between statutory law and common law, and an intention in using the words "in the present law" to put the reader at his peril to appreciate that there was also at present a common law doctrine in revived existence since 1908 floating about, quite at variance with Mr. Bowie's description of what the law appeared to him to be. He, someone extremely qualified to know, clearly proceeded on the understanding that the statute fully occupied the field.

It is important to observe that Caspary has had no occasion to plead looting of corporate assets or other fraudulent behavior by the incumbent directors of Louisiana Land. We, of course, have no occasion to address, much less decide, the question of what access to the stock ledger would then exist. It may well be that a short duration stockholder with less than 5% of the stock nevertheless might be held to have a right to inspect stock books and other documents to which the 5% and six months' requirements of § 2–513 apply if he could demonstrate looting of the corporate assets by the incumbent directors or other serious malfeasance. Here, however, the charge is no more than arguably poor management, not improper or illegal practices to the corporation's detriment. Fraud, it is sometimes said, vitiates all, but here we have no case of fraud. The continued existence of one common law right simply does not establish the existence of another.

Hence, while the opinions are distinguishable in some respects, both the Maryland Court of Appeals in *Parish v. Maryland and*

*Virginia Milk Producers Ass'n* and a respected United States District Judge for the District of Maryland, Herbert M. Murray in *Rosengarten v. Buckley,* have read the statute to exclude a common law right in stockholders holding less than 5% to seek access to the stock ledger even where they adequately allege a proper purpose. Analysis fully justifies that reading. No Maryland authority points to the opposite conclusion.

■ Judging, therefore, from the best evidence available as to the current state of the Maryland law, we have decided that the judgment below should be affirmed. In reaching our conclusion as to what the Maryland Court of Appeals would do, we by no means seek to intimate that the rule we have accepted as the one that court would reach constitutes the only possible one. In predicting the action another court would take, we deal only in terms of what is more likely and what is less likely. Shortness of time compels a prompt resolution of the question. Diversity jurisdiction has been resorted to by the plaintiff.[17] No suggestion for a certification of the question to the Maryland Court of Appeals has been made [18] and probably would be impractical given the time limitations. Hence, left to our own devices, we must do our best in making a principled decision as to what the Maryland Court of Appeals would do at this point in time.

We have given such weight as we deem appropriate to the consideration that, had this question arisen in 1908 when the statutory 5% requirement first appeared, or shortly thereafter, the decision might arguably have been otherwise. Three-quarters of a century ago, the veneration for the common law and the dislike for statutory intrusion upon it were greater than they are today in a society far more accustomed to legislative governance.[19] However, we

---

**17.** A federal claim was also initially asserted in the complaint as a jurisdictional predicate. The parties have both conceded that the federal claim is now moot. In its present posture, this is solely a diversity case.

**18.** *See* Courts and Judicial Proceedings Article of the Annotated Code of Maryland § 12–601.

**19.** The Maryland General Assembly has, today, full scale annual sessions. In 1908, it met only in alternate years. The 1867 Maryland Constitution in Article III, Section 13 provided that

deal with the current situation in 1983 and must give our answer in terms consistent with contemporary attitudes and understandings, for we would expect the Maryland Court of Appeals to do the same.

AFFIRMED.

HARRISON L. WINTER, Chief Judge, dissenting:

The sole question before us is whether a shareholder of a Maryland corporation has a common law right to inspect the stockholder list of that corporation for a "proper purpose," irrespective of the extent of his holdings. The district court ruled that he did not, and the majority affirms. Because I think that there is such a right, I respectfully dissent.

## I.

The parties, the majority and I are agreed that, at common law, a stockholder in a Maryland corporation, irrespective of the extent of stock holdings, enjoyed a right to inspect corporate records, including

stockholders lists, provided there was a proper purpose for the inspection.[1] *See* *Parish v. Maryland & Virginia Milk Producers Association,* 250 Md. 24, 242 A.2d 512, 547 (1968). We are agreed also that Article 5 of the Maryland Declaration of Rights continues in force in Maryland the common law of England, subject only to revisions, amendments or repeal by the Maryland General Assembly. The right of inspection claimed by Caspary is one such common law right.[2]

In 1868, the Maryland legislature first enacted a comprehensive statute governing the formation of business corporations, their powers and their governance and defining the rights of stockholders, (Chapter 471 of the Laws of 1868), revised it in 1908 (Chapter 240 of the Laws of 1908), and revised it again from time to time thereafter. The text of the present statute with respect to the right of stockholders to inspect and copy a corporation's stock ledger is found in § 2–513, Annotated Code of Maryland, Corporations and Associations, set forth below.[3] This section should be

the General Assembly should, for not longer than ninety days, meet every second year, "and at no other time unless convened by Proclamation of the Governor." Amendments in 1947, 1964 and 1970 gradually brought us to the present posture of annual ninety day sessions.

**1.** Plaintiff Caspary, having a current investment of approximately $3,300,000 in defendant, sought inspection to learn of the identity of other stockholders in order to solicit their proxies to oust what he considered to be an inefficient and inept management. The district court did not consider the issue of whether this purpose was a "proper" one, since it held that plaintiff had no common law right of inspection, but instead had an unqualified statutory right of inspection only if he, alone or with others who might join him, owned an aggregate of 5 percent of the outstanding stock of any class. In this case, such a percentage of ownership would represent an investment of in excess of $55,000,000. Notwithstanding that neither the district court nor the majority reaches this issue, it is virtually conceded by defendant that plaintiff's purpose is a "proper" one. *See infra* at text accompanying n. 16.

**2.** 3 H. Oleck, Modern Corporation Law § 1555, p. 604 (1959) refers to one of the first English cases recognizing the right, *Dominus Rex. v. The Fraternity of Hostmen in Newcastle-Upon-Tyne,* 25 Str. 1233, 93 Eng.Rep. 1144 (KB 1745).

**3.** Section 2–513 reads as follows:

(a) *In general.*—One or more persons who together are and for at least six months have been stockholders of record or holders of voting trust certificates of at least 5 percent of the outstanding stock of any class of a corporation may:

(1) In person or by agent, on written request, inspect and copy during usual business hours the corporation's books of account and its stock ledger;

(2) Present to any officer or resident agent of the corporation a written request for a statement of its affairs; and

(3) In the case of any corporation which does not maintain the original or a duplicate stock ledger at its principal office, present to any officer or resident agent of the corporation a written request for a list of stockholders.

(b) *Procedure by corporation after request.*—Within 20 days after a request for information is made under subsection (a) of this section, the corporation shall prepare and have available on file at its principal office:

(1) In the case of a request for a statement of affairs, a statement verified under oath by its president or treasurer or one of its vice-presidents or assistant treasurers which set forth in reasonable detail the corporation's assets and liabilities as of a reasonably current date; and

read in tandem with § 2–512 which sets forth a stockholder's other rights of inspection.[4] Briefly stated, § 2–513 gives an unqualified right to inspect and copy stock ledgers to any one or more persons who together own at least 5 percent of the stock of any class of the corporation for at least six months.

As the majority implicitly acknowledges, *see ante* at 788–791, neither § 2–513 nor any uncodified language of any Act which either enacted or amended it expressly repealed the common law qualified right of inspection.[5] Thus we must consider if there has been an implied repeal.

## II.

The Maryland precedents give ample recognition to the constitutional right of the Maryland legislature to revise, amend or repeal the common law. However, because the Declaration of Rights guarantees an entitlement to the common law, the Maryland courts have generally inferred a presumption of common law vitality absent specific *conflicting* legislation. *See, e.g., Gray v. State,* 43 Md.App. 238, 403 A.2d 853, 856–57 (1979) (citing cases). In the leading decision of the Maryland Court of Appeals, *Lutz v. State,* 167 Md. 12, 15, 172 A. 354, 356 (1934), the principles announced were that "to hold that a statute has abrogated common law rights existing at the time of its enactment, it must clearly appear that they are repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions nugatory." As an additional category of cases in which implied repeal may be found, *Lutz* also recognized that "a statute which deals with an entire subject-matter is generally construed as abrogating the common law as to that subject." *Id.*

An important correlative principle was enunciated by the Maryland Court of Special Appeals in *Neal v. State,* 45 Md.App. 549, 413 A.2d 1386, 1387 (1980). There the defendant, charged with the common law crime of indecent exposure, argued that the

---

(2) In the case of a request for a list of stockholders, a list verified under oath by one of its officers or its stock transfer agent or registrar which sets forth the name and address of each stockholder and the number of shares of each class which the stockholder holds.

4. Section 2–512 reads as follows:

 (a) *In general.*—Any stockholder, holder of a voting trust certificate in a corporation, or his agent may inspect and copy during usual business hours any of the following corporate documents:

 (1) Bylaws;

 (2) Minutes of the proceedings of the stockholders;

 (3) Annual statements of affairs; and

 (4) Voting trust agreements on file at the corporation's principal office.

 (b) *Inspection of stock records.*—(1) Any stockholder or holder of a voting trust certificate in a corporation other than an open-ended investment company may present to any officer or resident agent of the corporation a written request for a statement showing all stock and securities issued by the corporation during a specified period of not more than 12 months before the date of the request.

 (2) Within 20 days after a request is made under this subsection, the corporation shall prepare and have available on file at its principal office a sworn statement of its president or treasurer or one of its vice-presidents or assistant treasurers which states:

 (i) The number of shares or amounts of each class of stock or other securities issued during the specified period;

 (ii) The consideration received per share or unit, which may be aggregated as to all issuances for the same consideration per share or unit; and

 (iii) The value of any consideration other than money as set in a resolution of the board of directors.

5. Indeed, another provision of the Maryland general corporation law tends to preserve common law rights. Section 1–102(c) of the Corporations and Associations Article states that "[t]he provisions of this article are in addition to and not in substitution of *any other requirements of law* relating to any particular corporation or class of corporation." (emphasis added) Moreover, § 1–102(d)(1) which repeals laws inconsistent with the Article limits its repealing effect to any inconsistent "provision of the *Code*." (emphasis added). The carefully chosen language establishing the Article as supplementary to other "law" but repealing only inconsistencies within "the Code" supports my view of the statutory regulation of corporations as having not been intended to be the exclusive source of law in the area.

common law in the area had forever been extinguished by the passage in 1967 of an express statutory provision dealing with the same conduct. The court noted that the common law crime had in fact been supplanted by statute during the life of the statute, but looked to a subsequent legislative revision amending the 1967 statute in a way no longer inconsistent with the common law. Rejecting defendant's contention regarding the permanent death of the common law because "he misconstrues the principles applied in *Lutz*", the Court of Special Appeals followed the rule of construction that "[w]hen a statute abrogating a principle of the common law is repealed, the common law principle is revived." *Id.* at 1387. That such a principle obtains in the field of criminal law, where constitutionally rooted considerations of fair warning and avoidance of unfair surprise are central to a valid conviction, provides all the more reason for rejecting the notion that the common law right at issue was buried forever in 1868.[6]

As an exercise of reasoning in applying the Maryland authorities, then, I would conclude that the legislature did not abrogate *sub silentio* the common law right by enactment of the statutory right. The former is a qualified right exercisable only upon a showing of a proper purpose. The latter is a much more expansive *unqualified* right exercisable just by virtue of 5 percent own-

ership existing for at least six months prior to its exercise.[7] The two rights supplement one another; while, in a given situation, there may be some overlap, each can be enforced without rendering the other nugatory. There is no inconsistency.

I recognize also that § 2–513 is only one section of a comprehensive compilation of enactments relating to corporations, but I do not see how the Corporations and Associations article of the Maryland code can be said to displace the common law of corporations in its entirety. First, there is the savings clause in § 1–102(c) and the legislative declaration in § 1–102(d) that the implied repealing effect of the article is limited to inconsistent provisions of "the Code." *See supra* at n. 5. More importantly, the Corporations article, unlike some other enactments such as the Workmen's Compensation article,[8] has not been construed by the Maryland courts to occupy the field of corporate law so completely as to abrogate all applicable common law. For example, the duties and liabilities of corporate officers and directors are extensively regulated in §§ 2–401 through 2–418, yet the Maryland courts have looked to common law fiduciary standards to supply the basic law governing their relationship to the corporation unless there is a specific contrary statutory provision. *See, e.g., Merchants Mortgage Company v. Lubow,* 275 Md. 208, 339 A.2d 664,

6. For still other recent cases consistent with the authorities named in the text, *see In re A Special Investigation # 202,* 53 Md.App. 96, 452 A.2d 458, 462 (1982); *Funkhouser v. State,* 51 Md.App. 16, 440 A.2d 1114, 1116 (1982); *Keesling v. State,* 288 Md. 579, 420 A.2d 261 (1980); *Baltimore County v. Xerox Corp.,* 286 Md. 220, 406 A.2d 917, 921 (1979).

7. *Parish, supra,* 242 A.2d at 549, explains that when the Maryland legislature concluded to broaden the right of inspection by removing the requirement of a proper purpose it adopted the 5 percent restriction "to prevent *an abuse* of the common law right of a single stockholder to demand inspection . . . when the amount of the stock holding was insignificant compared to the whole stock structure." (emphasis in original). As will be discussed further, *infra* at n. 15, the reference in *Parish* must be to the completely unqualified right existing after the 1868 broadening of the right of inspection. I

am not so quick to believe, as the majority appears to be, that the same courts extolled for their care and deliberation will turn a "proper purpose" showing, the burden of which is on the plaintiff, into a meaningless formality under which every holder of a single share can procure the shareholder list at a whim. With the affirmative burden on the party seeking disclosure, *see Parish* at 547, demonstration of a "proper purpose" requires more than the mere *absence* of a plaintiff who appears "to be acting malevolently or contrary to corporate best interests." *Ante,* at 791. We need not catalogue what purposes are "proper" here, however, because Caspary's, if genuine, is well-recognized as such. *See supra* at n. 1; *infra* at text accompanying n. 16.

8. *Cf. Honaker v. W.C. & A.N. Miller Development Co.,* 285 Md. 216, 401 A.2d 1013, 1016 (1979).

669 (1975); *Rolling Inn v. Iula,* 212 Md. 596, 130 A.2d 758, 759–60 (1957) (self-dealing); *Levin v. Levin,* 43 Md.App. 380, 405 A.2d 770, 777 (1979) (constructive presidency of corporation, imposing fiduciary duties on officeholder).[9]

My view that a common law right of inspection exists in Maryland despite § 2–513 has impressive support. Section 2–513 was first enacted in 1908, and, contemporaneous with its enactment, Arthur W. Machen, a respected Maryland authority, wrote, in *II Modern Law of Corporations,* § 1100, p. 896 (1908), that, in his view, such statutes generally did not supplant the common law, because "statutes which confer upon shareholders a limited right to inspect the company's books should not be construed to restrict by implication their common-law rights." While Machen's view is not, of itself, dispositive, it is the strongest statement available to us of what the understanding of the legislature of his day would have been in passing a 5 percent unqualified inspection right, *i.e.,* that the courts would presume not to construe a restriction on the common law by implication.

After § 2–513 was re-enacted to cast it in substantially its present form, Machen's early view was echoed years later by Herbert M. Brune, an equally respected Maryland authority, in *Maryland Corporation Law and Practice,* Section 383, p. 445 n. 26 (Rev. ed. 1953):

> The further restriction of the statutory right under the 1951 revision would permit a *persuasive argument to a court of equity to grant an application by a substantial stockholder for leave to examine the books, although he had not held his* stock for a sufficient period or could not otherwise qualify under the statute. The Court of Appeals has stated that, fundamentally, the right to inspect the books rests on the proposition that those in charge of the corporation are, in substance, merely the agents of the stockholders who are the real owners of the property . . . . *The basic relationship of the stockholder to his corporation is not altered by the statutes, and it may well be that these statutes are intended to grant additional and supplementary rights of inspection, in aid of the basic general right.* (Emphasis added).

The majority artfully intimates that by referring to a "substantial" shareholder, the author impliedly embraced the majority's view that the 5 percent stock holdings requirement was exclusive. *Ante,* at 790 n. 8. Yet the text accompanying the cited footnote shows that his belief as to the state of the law was precisely the opposite:

> The statutory right, however, is possibly supplemental to the common-law right of reasonable access to by-laws, minute books and stockholders' lists, and may not supersede such right altogether.

Brune, *supra,* at 445. This conclusion is not limited to the six months' holding requirement added in 1951, but rather when examined in full discloses that, except for some residual qualification attendant to the absence of a state court decision squarely so holding, Brune was in accord with Machen's view that the common law right survived the 5 percent statute.[10]

The cases in other jurisdictions and nonjudicial authorities are either fully in accord with my conclusion that a statute broadening the right of inspection but conditioning

---

**9.** The invocation of common law as a supplement to Maryland's statutory corporate law has also been accomplished by the federal courts, even where a greater conflict with the statutory provision than is suggested here appeared. For example, despite statutory requirements of two-thirds shareholder approval as prerequisite to the dissolution of corporate property as a whole, "they are not to be taken as in derogation of the [common law] right on the part of the directors, by their own vote, without more, to place the corporation in bank-

ruptcy." *In re Pneumatic Tube Steam Splicer Co.,* 60 F.2d 524, 526 (D.Md.1932).

**10.** If the majority concedes only that the six months' holding requirement might be waived upon a showing of proper purpose in an appropriate case, as it apparently does, *ante* at 790 n. 8, it offers no reason for finding the 5 percent limit inflexible but the six-month provision tempered by common law principles. If one is so qualified, so must be the other.

it upon the duration and extent of stock ownership does not abrogate the common law right of inspection, or else recognize that the ousting of the common law by such a statute does not necessarily obtain. *See Tucson Gas & Elec. Co. v. Schantz,* 5 Ariz. App. 511, 428 P.2d 686 (1967); *State ex rel. Grismer v. Merger Mines Corporation,* 3 Wash.2d 417, 101 P.2d 308 (1940); *Estate of Bishop v. Antilles Enterprises,* 252 F.2d 498 (3 Cir.1958); *State ex rel. Great Fidelity Insurance Company v. Circuit Court of Posey County,* 259 Ind. 441, 288 N.E.2d 143 (1972); *State v. Crookston Trust Co.,* 222 Minn. 17, 22 N.W.2d 911 (1946); *Sivin v. Schwartz,* 254 N.Y.S.2d 914 (1964).[11] Other New York cases express the same holding.[12] *See also* Watson, Protecting the Shareholders' Right to Inspect the Share Register in Corporate Proxy Contests for the Election of Directors, 50 So.Cal.L.Rev. 1273, 1280 n. 39 (1977); H. Henn, Handbook of the Law of Corporations, 397 (2d ed. 1970); 5 Fletcher, Cyc. of Corporations, § 2215.1 (1976 rev. ed.). This overwhelming trend cannot be ignored; we have previously recognized that where no Maryland case is directly on point, interpretation of another state's law, even by another federal court, will be taken as controlling on a materially similar issue. *Tillman v. Wheaton-Haven Recreation Assoc., Inc.,* 580 F.2d 1222, 1227–28 (4 Cir. 1978).[13]

In summary, in carrying out my obligation in this case to predict Maryland law, I am persuaded that the Maryland courts would continue to recognize and give effect to the common law right of any stockholder to inspect the stock ledger of the corporation in which he owns shares for any proper purpose.

### III.

I deal next with the arguments advanced by the defendant and embraced by the majority to reach a contrary conclusion.

The principal thesis advanced in opposition to my view stems from the legislative history of § 2–513. The factual basis for the argument begins in 1868, when the Maryland legislature gave all stockholders and members of corporations the unqualified right to inspect any corporate records at any time (Ch. 471, Acts of 1868). Then, in 1908, this right was limited with respect to stockholders to those who owned 5 percent of any class of stock (Ch. 240, Acts of 1908). Still later the 1908 restriction was lessened with respect to certain records other than stock ledgers (§ 2–512). From this it is argued that statutory law completely occupied the field in 1868, so that when the right of inspection was contracted in 1908, it could not have been intended that a pre-

**11.** With regard to this and other New York authorities, the majority seeks to distinguish them on the ground that the New York Corporation statute had a savings clause, expressly preserving a stockholder's common law right of inspection. As previously suggested in n. 5 and the accompanying text, Maryland does have a counterpart. Moreover, the absence of a savings clause is irrelevant until it is shown that some statute is inconsistent with the common law, and I have shown that there is no inconsistency.

**12.** Pertinent among the New York authorities are: *Weisfeld v. Spartan's Industries, Inc.,* 58 F.R.D. 570, 579 (S.D.N.Y.1972) (owner of only 50 out of over 3.5 million shares of common stock granted access to shareholder's list for purpose of soliciting co-plaintiffs in derivative suit); and *Rockwell v. SCM Corporation,* 496 F.Supp. 1123, 1125–26 (S.D.N.Y.1980) (common law right of access to shareholder list upon showing of "proper purpose" not displaced by statutory unqualified right; "the stat-

utory right of inspection was intended to supplement rather than replace the common law.").

**13.** I recognize that other than the opinion of the district court in the instant case, there is another contrary authority emanating from the District Court of Maryland in an unpublished opinion on a collateral matter. With it I respectfully disagree. As a rule, we do not even treat unpublished opinions of our own court as binding precedents. That it was rendered by a judge who was a Maryland lawyer before he became a judge does not give it any special persuasiveness for, as a neutralizing factor, I am bound to recognize that he did not previously specialize in corporate practice. Nor is this an issue that repeatedly arises in diversity cases with which the judge of the forum state might be expected to have acquired special facility, as was the situation regarding a state statute of limitations in the case cited by the majority, *Hartford v. Gibbons & Reed Co.,* 617 F.2d 567 (10 Cir.1980).

1868 common law right of inspection be revived.

There are, in my view, two answers. First, as already suggested, the argument flies in the teeth of *Neal v. State, supra,* because it presupposes that when the legislature codified and expanded the common law right in 1868, the common law would have been wiped out. *Neal* is specific in saying that "[w]hen a statute abrogating the common law is repealed, the common law principle is revived." [14] Second, the argument is belied by *Parish* when that decision is closely analyzed.

*Parish,* so far as is pertinent here, was a derivative suit by a member of a member corporation to redress wrongs done to the corporation by its officers and directors. Among the relief sought was inspection of corporate records including the membership list. Disclosure was resisted on the ground that it was not authorized by the Maryland statutes regulating a member's right of inspection. In the 1868 statute already referred to, the Maryland legislature had given an unqualified right of inspection to members of non-stock corporations as well as to stockholders of stock corporations. *Parish, supra,* 242 A.2d at 547–48. In the 1908 revision, no mention of members was made; from this omission it was argued that a member's right of inspection ceased to exist after 1908. The argument was rejected, however, and the court held that after 1908 a member had a right of inspection of the books and records of the member corporation, including the list of the general membership. *Id.* at 549–50.

The significance of *Parish* is that, in full accord with *Neal,* it rejected the idea that the repeal or modification of a statute abrogating or at least embodying the common law meant that the common law right ceased to exist. If the majority's premise were correct, the very common law right found in *Parish* would have ceased for members as of 1868. Instead, the Court of Appeals applied the common law to permit inspection of the membership list. Similarly, when the Maryland legislature broadened the common law right of inspection for shareholders and members in the 1868 act, it did not, to my mind, obviate the qualified right of inspection for a proper purpose which had existed at common law, nor did it do so when it limited the unqualified right of stockholders in 1908.[15]

### IV.

Since I would reverse the judgment of the district court and return the case for

---

14. This rule is followed in other jurisdictions as well. *See, e.g., State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353, 357 (1959) ("When a statute repeals the common law and the statute itself is subsequently repealed, the common law is revived and when a statute which is declaratory of the common law is repealed the common law remains in force for the reason that the statute was an affirmance of the common law."); *North Shore Hospital, Inc. v. Barber,* 143 So.2d 849 (Fla.1962) (common law supplanted by statute in 1873 revived by repeal of statute in 1955); *Lau v. Nelson,* 89 Wash.2d 772, 575 P.2d 719, 721 (Wash.1978) ("... the repeal of a statute does not operate to destroy vested rights, or rights of a common law nature which are further embodied in the repealed statute, the latter existing independently as enforceable rights."); *State v. Buck,* 275 N.W.2d 194, 197 (Iowa 1979) (criminal law); *Makin v. Mack,* 336 A.2d 230, 234–35 (Del.Ch.1975) (common law landlord-tenant rule revived upon 1972 statutory recodification not addressing specific issue).

15. The majority draws the inference that the 1908 act was specifically intended to abrogate the common law qualified right from Judge Barnes' elaboration of the history of § 2–513, in which he states that the 5 percent restriction was added to prevent abuse "of the common law right." *Parish, supra,* 242 A.2d at 549; *see ante,* at 787. But there is no solace for the majority to be drawn therefrom. If in 1908 there was an existing common law right to be abused, the majority's major premise—that the common law right was laid to rest in 1868—obviously cannot be true. On the other hand, it seems strange that the legislature would have been constricting the *common law* right in 1908, since for several decades stockholders had no occasion to abuse the right when they could obtain all they wanted under the far more liberal statutory right. With all due respect to the precision of Judge Barnes' writing, his reference to what was abused can only have been intended to refer to the unqualified right of inspection prevailing prior to the 1908 revision. *Parish,* even as *dictum,* cannot sensibly be understood to suggest a legislative intention to abolish the common law right.

further proceedings, it is appropriate that I comment on the nature of the relief that should be granted. Although only mildly contested, it has not been judicially determined whether plaintiff seeks to exercise his right of inspection for a "proper" purpose. That issue should not present great difficulty for there is considerable authority for the proposition that inspecting and copying for the purpose of solicitation of proxies is a proper purpose. *See, e.g., Protecting Shareholders' Right, supra,* 50 So. Cal.L.Rev. at 1282; 5 Fletcher, *supra,* § 2223.2; *In re LTV Securities Litigation,* 89 F.R.D. 595 (N.D.Tex.1981); *Weber v. Continental Motors Corporations,* 305 F.Supp. 404 (S.D.N.Y.1969); *NVF Company v. Sharon Steel Corporation,* 294 F.Supp. 1091 (W.D.Pa.1969); *Hatleigh Corporation v. Lane Bryant, Inc.,* 428 A.2d 350 (Del.Ch. 1981).[16]

The annual meeting of the defendant is set for May 12, 1983. Plaintiff sought access to the stockholder's ledger on April 4, 1983. Since in my view the request has probably been improperly and illegally denied, I would think that the district court upon proper application should give serious consideration to delaying the meeting until plaintiff's rights have been adjudicated [17] and, if plaintiff prevails, thereafter until plaintiff's rights have been vindicated.

## ADDENDUM

Following announcement of the panel decision and the dissent, Appellant, by petition filed April 19, 1983, sought rehearing and made a suggestion for rehearing *en banc*. Before action could be taken with respect to rehearing or rehearing *en banc,* Appellant's counsel, by motion filed April 28, 1983, notified the Court that the case had become moot.

16. In this connection I note that plaintiff has offered to bear all costs of inspection and copying, thus undercutting any argument of undue burden on defendant in producing such a list.

17. The power to do so has long been recognized. *See Empire Southern Gas Co. v. Gray,*

29 Del.Ch. 95, 46 A.2d 741, 743 (1946); *Campbell v. Loew's, Inc.,* 36 Del.Ch. 533, 134 A.2d 565, 567 (1957); *cf. Vanadium Corp. of America v. Susquehanna Corp.,* 203 F.Supp. 686, 699–700 (D.Del.1962) (citing cases).